# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.:

**TYLER BURROWS,**

    Plaintiff,

V

**GOPRO, INC.,**

    Defendant.

## COMPLAINT & JURY DEMAND

Plaintiff, Tyler Burrows, by and through his attorneys Ross Ziev of the Law Offices of Ross Ziev. P.C., for claims against the Defendant, alleges as follows:

## PARTIES

1. Plaintiff, Tyler Burrows, is an individual and was, during all relevant time periods, a resident of Murray, Utah.

2. Defendant, GoPro Inc. ("GoPro"), is and was during all relevant time periods, a California Corporation, with its principal place of business in San Mateo, California.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter and the parties in this case pursuant to 28 U.S.C. § 1332(a), diversity of citizenship of parties.

4. The amount in controversy exceeds $75,000, exclusive of interest and cost.

5. Venue is proper in accordance with 28 U.S.C. § 1391(b)(2) because a substantial part of the relevant events or omissions giving rise to the claims in this case occurred in this judicial district.

## GENERAL ALLEGATIONS

6. GoPro sells cameras and accessories geared towards the outdoor thrill seeker. It regularly promotes and pays athletes who perform outlandish acts in the water, in the air and on land.

7. Every year, GoPro organizes the GoPro Mountain Games ("Mountain Games") in Vail, Colorado which it touts as "The best all-around mountain experience anywhere in the world." https://mountaingames.com/about/

8. During the games, GoPro engages athletes to perform aerial stunts using equipment with the prominently displayed GoPro logo.

9. One of the groups of athletes invited to participate in the Mountain Games in 2018 was the "GoPro Bomb Squad."

10. The "GoPro Bomb Squad" is a flying sports demonstration team sponsored by GoPro to provide content and flying demonstrations at events.

11. Marshall Miller, a member of the "GoPro Bomb Squad," as an agent of GoPro, invited Tyler Burrows to fly a GoPro-logoed paramotor at a specific time and location during the Mountain Games.

12. At the time, Tyler Burrows was a licensed and trained helicopter pilot and an amateur paramotor operator.

13. A paramotor is a combination paraglider ("wing") with a fan motor ("motor") that sits on the rider's back like a backpack. The motor allows the rider to gain altitude from the ground instead of launching a paraglider from high elevation.

14. Prior to inviting Tyler Burrows to participate, Marshall Miller was aware of Tyler Burrows experience level with a paramotor.

15. In order to participate in the Mountain Games, Tyler Burrows was told he could not use his own wing but had to use a wing that was logoed with the GoPro logo.

16. Tyler Burrows was able to use his own motor, but was given the GoPro logoed wing by Jesse Hall, a member of the "GoPro Bomb Squad" who was unable to attend the event.

17. Based on information and belief, Marshall Miller received all of his directions as to the logistics and details of the flights directly from GoPro.

18. Tyler Burrows was told by Marshall Miller, as agent for GoPro, that he would be flying on Friday night and Saturday night, June 8 and 9, 2018. He was told where he should take off from, where he should circle around the venue to demonstrate paramotoring with the GoPro logo prominently displayed, and where he should land.

19. On Friday evening, Tyler Burrows launched from the assigned takeoff location, flew the designated flight path as he was told, and landed in the assigned landing area with no issue.

20. On Saturday June 9, 2018, there were strong and gusty winds which created unfavorable conditions for the flight which was scheduled to take place at 7pm.

21. Tyler Burrows informed Marshall Miller that he was uncomfortable with the flight conditions and asked Marshall Miller to make a call to the other GoPro officials to request a delay until the weather conditions calmed down.

22. Based on information and belief, Marshall Miller called another GoPro official to relay Tyler Burrows' request.

23. Tyler Burrows was told by Marshall Miller, as agent for GoPro, that a delay would not be possible, that he had to proceed with the 7pm flight time in the unfavorable weather conditions.

24. Marshall Miller took off from the designated location and started circling around and started his maneuvers to capture GoPro video content.

25. Marshall Miller, as agent for GoPro, signaled to Tyler Burrows to follow him.

26. Tyler Burrows took off from the designated location and started circling to build altitude.

27. After the first circle, Tyler Burrows determined that the weather conditions were unfavorable and signaled to Marshall Miller that he was uncomfortable and would proceed to the designated landing spot.

28. As Tyler Burrows was turning for the final approach, the turbulent wind conditions collapsed the wing and threw Tyler Burrows to the ground in a freefall.

29. In the last second, Tyler Burrows was able to rotate so that the frame of the motor took the initial impact.

30. Paramedics were on scene within minutes.

31. Tyler Burrows was taken by ambulance to the Vail Health Hospital Emergency Room.

32. Tyler Burrows was transferred to Denver Health via Flight for Life helicopter.

33. Doctors diagnosed him with fractures of his femur, hip, arm, pelvis, and tailbone which required multiple surgeries.

34. Tyler Burrows stayed in Denver Health for sixteen (16) days before being discharged.

35. Tyler Burrows stayed with his mother in Colorado for approximately six weeks while recovering.

36. After returning to Utah, Tyler Burrows underwent another surgery at the University of Utah.

37. Tyler Burrows had to learn how to walk again.  He was non-weight bearing for six weeks at which point, he started using a walker and eventually a cane.

38. Pursuant to the doctrine of respondeat superior, Marshall Miller's actions, inactions, and decisions are imputed onto GoPro.

### FIRST CLAIM FOR RELIEF
### Negligence

39. Plaintiff incorporates herein all allegations set forth above.

40. Plaintiff relied upon Defendant's expertise in creating a safe flying environment for Plaintiff.

41. Defendant had a duty to warn Plaintiff of the safest options of flying a GoPro Wing.

42. Defendant had a duty to warn Plaintiff that the wind conditions were not favorable at the estimated launch time.

43. Defendant had a duty to act reasonably under the circumstances.

44. Defendant had a duty to allow Plaintiff to delay the flight due to unfavorable weather conditions.

45. Defendant breached these duties to Plaintiff when it ordered Plaintiff to fly the GoPro Wing in wind conditions that were not favorable.

46. As a direct and proximate result of Defendant's breach of its duties to Plaintiff, Plaintiff has incurred damages, including but not limited to, loss of earning capacity, past and future medical expenses, permanent impairment to his body, past and future pain and suffering, emotional distress, anxiety, scarring/disfigurement, all of which are continuing in nature, resulting in damage to him in an undetermined sum at this time.

## SECOND CLAIM FOR RELIEF
### Premises Liability

47. Plaintiff incorporates herein all allegations set forth above.

48. Plaintiff pleads Premises Liability in the alternative.

49. Defendant may be found to be landowner under the statute at the time of the Incident, pursuant to C.R.S. § 13-21-115(1).

50. If Defendant is found to be a landowner, Defendant would have owed Plaintiff a duty to exercise reasonable care with respect to dangers at the Property of which it knew or should have known.

51. Said duty is a non-delegable duty. Restatement (2d) of Torts, Section 422 (1965); *Springer v. City, County of Denver*, 13 P.3d 794 (Colo. 2000); *Reid v. Berkowitz*, 2013 COA 110.

52. As a direct and reasonably foreseeable result of Defendant's duty to protect Plaintiff from flying in the dangerous weather conditions, Plaintiff has suffered and will suffer Injuries, including without limitation economic damages, non-economic damages, and physical impairment and disfigurement.

WHEREFORE, Plaintiff prays that judgment be entered in his favor and against Defendant for general and special damages in an amount which will fully and fairly compensate him for injuries and damages, both past and future.  Plaintiff further prays that the Court award him prejudgment and post judgment interest as permitted by law, cost of this suit, fees as recoverable by law, and for such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a jury trial.

Respectfully submitted this 18th day of May, 2020.

THE LAW OFFICES OF ROSS ZIEV, P.C.

By: */s/ Ross Ziev*
Ross Ziev, #43181
6795 East Tennessee Avenue, Ste. 210
Denver, CO  80224
Phone:  (303) 351-2567
Fax:  (720) 669-6992
ross@helpincolorado.com